UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

Jeff Kandt,

                                        Plaintiff,

      -v.-                                    5:09-CV-0507
                                                  (NPM-ATB)

Taser International, Inc.,

                                        Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Attorneys for Plaintiff: | |
| WILLIAMS & RUDDEROW, PLLC<br>250 Harrison Street<br>Suite 302<br>Syracuse, NY 13202 | S. ROBERT WILLIAMS, ESQ.<br>MICHELLE ELLSWORTH<br>  RUDDEROW, ESQ. |
| BURKE & BURKE LAW FIRM<br>16 West Main Street<br>Suit 100<br>Rochester, New York 14614 | PATRICK J. BURKE, ESQ. |
| Attorneys for Defendant: | |
| RENZULLI LAW FIRM, LLP<br>81 Main Street<br>Suite 508<br>White Plains, NY 10601 | CHRISTOPHER RENZULLI, ESQ.<br>JOHN RENZULLI, ESQ.<br>JOHN V. TAIT, ESQ. |
| TASER INTERNATIONAL, INC.<br>17800 North 85th Street<br>Scottsdale, AZ 85255 | HOLLY L. GIBEAUT, ESQ.<br>MICHAEL A. BRAVE, ESQ. |

Neal P. McCurn, Senior District Judge

## *MEMORANDUM-DECISION and ORDER*

## *I. Introduction*

Presently before the court in this products liability action is a motion for summary judgment by defendant, Taser International, Inc. ("Taser") against plaintiff, Jeff Kandt ("Kandt"). Kandt opposes, and Taser replies. Also pending are several motions in limine by both parties as well as a motion by Kandt to strike certain of Taser's affirmative defenses. Those motions are fully briefed as well.[1] Decision on the motion for summary judgment is rendered based solely on the parties' submissions without oral argument. Due to the disposition of Taser's motion for summary judgment, the remaining motions are denied as moot.

## *II. Factual Background*

Plaintiff Kandt is a deputy with the Oswego County Sheriff's Department ("OCSD") who was injured on May 29, 2007 during a training exercise in the use of the TASER® model X26™, an electronic control device ("ECD") manufactured by defendant, Taser. Although not required for user certification by Taser, OCSD adopted a policy that any deputy who wanted to carry a Taser ECD

---

[1] These motions include (1) a motion by plaintiff to preclude defendant from offering testimony of six proposed expert witnesses, see Dkt. No. 62; (2) a motion by plaintiff to strike 25 of defendant's 58 affirmative defenses, see Dkt. No. 64; (3) a motion by defendant to exclude the expert testimony of John Webster, Ph.D., and to limit the causation testimony of three of plaintiff's treating physicians, see Dkt. No. 65; (4) a motion by defendant to exclude the opinions of plaintiff's proffered economist, William Blanchfield, Ph.D., see Dkt. No. 66; (5) a motion by defendant to exclude the warning opinions of plaintiff's proffered expert, Kenneth Laughery, Ph.D., see Dkt. No. 67; and (6) a motion by plaintiff to preclude defendant from offering waiver or release as evidence, see Dkt. No. 68.

must experience an ECD exposure during the user training. Kandt claims that an exposure he received during training caused vertebral compression fractures, permanent burn marks and short term memory loss.

The training was presented by OCSD Sergeant Thomas Ravesi ("Ravesi"), a 19-year veteran who is an experienced law enforcement trainer in firearms, defensive tactics, ASP expandable batons and OC (pepper) spray. At the request of his lieutenant, Ravesi underwent Taser's X26/M26 two-day instructor training course, which was paid for by OCSD. Other than attending the instructor training course, Ravesi never had any kind of relationship with Taser, and has never received any compensation from Taser.

Ravesi presented the user training course to Kandt and eleven other OCSD deputies on May 29, 2007. During the training, Ravesi used Taser's copyrighted materials, including the TASER® model X26™ User Course Version 13 Power Point presentation. Included in the materials used is a form that Kandt read and freely signed, entitled, "Volunteer Warnings, Risks, Liability Release and Covenant not to Sue." Ex. 2 to Decl. of Patrick W. Smith, Sept. 30, 2011, Dkt. No. 69-2. This form includes a paragraph entitled, "Strain Injury Risks," which reads as follows:

> It is possible that the injury types may include, but are not limited to, strain-type injuries such as hernias, ruptures, dislocations, tears, or other injuries to soft tissue, organs, muscles, tendons, ligaments, nerves and joints. Fractures to bones, including vertebrae, may occur. These injuries may be more likely to occur in people with pre-existing injuries or conditions such as pregnancy, osteoporosis, spinal injuries, diverticulitis, or in persons having previous muscle, disc, ligament, joint, or tendon damage. It is believed that the risk of these injuries is comparable to or

3

> less than the risk(s) from vigorous physical exertion, such as weight training, wrestling, or other intense athletic endeavors.

Id. Kandt testified that he read and understood the above warning prior to his ECD exposure on May 29, 2007. However, in opposition to Taser's motion for summary judgment, Kandt submitted an affidavit explaining that despite reading and understanding the above warning, and signing the form entitled, "Volunteer Warnings, Risks, Liability Release and Covenant not to Sue," prior to receiving his ECD exposure, he believed that he "could experience some soreness similar to engaging in physically challenging activity but that such soreness would be temporary" and he "did not perceive any risk in taking an exposure." Aff. of Jeff Kandt, Jan. 16, 2012, ¶¶ 4, 6, Dkt. No. 77-7.

### III.  *Procedural Background*

Kandt commenced this action against Taser, setting forth five causes of action. By Kandt's opposition to Taser's motion for summary judgment as to the entire complaint, Kandt concedes that certain of his claims "do not have merit" and that "the facts and testimony in this case ha[ve] rendered plaintiff's breach of warranty, fraud, and design defect (as it pertains to anything other than failure to warn) claims moot." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., at 3, 6, Dkt. No. 79. Kandt goes on to explain that this case is "one solely of failure to warn based on a strict products liability doctrine." Id., at 6. Accordingly, the court addresses Taser's motion for summary judgment solely regarding Kandt's failure-to-warn claim and deems all remaining claims in the complaint withdrawn, and therefore dismissed with prejudice.

## IV.  Discussion

### A.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant has the initial burden to show the court why it is entitled to summary judgment.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact.  See id., at 273 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

When deciding whether a material issue of fact is in dispute, the court is cognizant that "[a] fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir. 2010) (internal citation omitted).  Also, a material fact is genuinely in dispute "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted).  Finally, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,

5

373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970)).

It should also be noted that, pursuant to Local Rule 7.1(a)(3), the court deems admitted any properly supported statement of material fact that is not specifically controverted by the opposing party. See N.D.N.Y. R. 7.1(a)(3). See also Figueroa v. Tri-City Highway Prods., Inc., No. 08-CV-868, 2010 WL 3635247, at *2 (N.D.N.Y. Sept. 10, 2010) (citations omitted).

### B.  Strict Products Liability Failure to Warn Under New York Law

Kandt asserts a strict products liability claim against Taser for failure to warn under New York common law based on the inadequacy of Taser's warning. Taser argues that such a claim must be limited to compression fracture risks, and that because its warning was adequate as a matter of law, it is entitled to summary judgment on this claim. Kandt opposes Taser's motion for summary judgment in this regard, arguing that the warning was inadequate because he reasonably believed it did not apply to him.[2]

To begin with, Taser is correct that resolution of the issue of the adequacy of its warning shall be limited solely to compression fracture risks. While Kandt alleges that he also suffered burn marks on his neck and short term memory loss as a result of his ECD exposure, he concedes in his opposition papers this case is about one issue only – whether Taser adequately warned Kandt of the risk of a

---

[2]  Kandt also argues that this court's Local Rules require dismissal of Taser's motion for summary judgment because Taser failed to annex the pleadings to its statement of material facts. Kandt further argues that Taser violated the Local Rules by submitting a memorandum of law in excess of this court's 25-page limitation See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., at 3, 6-7 (citing N.D.N.Y. L.R. 7.1(a)(1),(3)), Dkt. No. 79.  These arguments have no basis in law or fact, and will not be addressed further.

thoracic compression fracture as a result of a training exposure. See Pl.'s Mem. of Law, at 3, Dkt. No. 79. Moreover, as Taser points out, Kandt has failed to submit any expert evidence to establish that an exposure could result in short term memory loss. See Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004). Therefore, the analysis here will be limited to the adequacy of Taser's warning of the risk of compression fractures.

In New York, "[i]n order to recover in a strict products liability action, the plaintiff must prove that the defendant manufactured for sale, or sold, distributed, leased, or otherwise marketed a product, that the product was defective, that the plaintiff was injured and that the defect was a substantial factor in causing the injury." Fisher v. Multiquip, Inc., — N.Y.S.2d —, 2012 WL 2137254, *1 (N.Y. App. Div. June 14, 2012) (internal citation omitted). "[A] product may be defective by reason of a manufacturing flaw, improper design or failure to warn." Id. (internal citation and quotation omitted).

A plaintiff asserting a claim for failure to warn must prove "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm." Donald v. Shinn Fu Co. of America, No. 99-CV-6397, 2002 WL 32068351, at *8 (E.D.N.Y. Sept. 4 2002) (quoting Colon et al. v. Bic USA, Inc., 199 F. Supp. 2d 53, 84 (S.D.N.Y.2001)). "Liability for failure to warn may be imposed based upon either the complete failure to warn of a particular hazard or the inclusion of warnings that are insufficient." Fisher, at 2012 WL 2137254, at *2. "Although the adequacy of a warning generally is a question of fact, in a proper case the court can decide as a matter of law that there is no duty to warn or that the duty has been discharged as a matter of law." Id.

7

Here, Taser argues that its warning is clear and unambiguous, and therefore the court may determine its adequacy as a matter of law. Kandt counters that issues of fact exist regarding the adequacy of the warning, and therefore Taser's motion for summary judgment must be denied. Kandt points to several areas of the record where, he contends, factual questions are raised: (1) Kandt's affidavit explaining his perception that the warning did not apply to him; (2) the affidavits of several of Kandt's fellow officers averring that they would not have agreed to an exposure had they known they could have suffered broken vertebrae; (3) a declaration from OCSD's sheriff that he would not have mandated that trainees receive an exposure had he known of the risk of vertebral fractures; and (4) the proposed expert opinion of Dr. Laughery that Taser's warning was inadequate because it downplayed the risk of vertebral fractures, violated warnings principles, was not in color, was not easily readable, and led lay persons to believe the risk applied only to those with preexisting conditions.

When determining whether a given warning is legally adequate or presents a factual question for a jury, the court must carefully analyze the warning's language. See Martin v. Hacker, 628 N.E.2d 1308, 1312, 83 N.Y.2d 1, 10, 607 N.Y.S.2d 598, 602 (1993). The factors to be considered are whether the warning is accurate, clear, and consistent on its face, and whether it portrays the risk with sufficient intensity. See id. See also Lancaster Silo & Block Co. v. Northern Propane Gas Co., 427 N.Y.S.2d 1009, 1015, 75 A.D.2d 55, 65 (N.Y. App. Div. 1980); Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 568 (S.D.N.Y. 2005).

Here, it is clear that the level of risk involved, vertebral fractures, is high. It is against that backdrop that the adequacy of the warning must be evaluated. Regarding the accuracy of the warning, no issue has been raised in that regard.

Therefore, as long as the warning is clear and consistent, it will be deemed adequate as a matter of law. Regarding the clarity of the warning, the language must be direct, unequivocal and sufficiently forceful to convey the risk. See Martin, 628 N.E.2d at 1313. In addition, where the language of the warning is otherwise clear and concise, such clarity may be overcome if the warning language, viewed as a whole, is internally inconsistent or contradictory. See id.

Taser argues that its warning sufficiently conveys the risk in a clear and concise manner, pointing to the stand-alone sentence, "[f]ractures to bones, including vertebrae, may occur[,]" within the paragraph entitled, "Strain Injury Risks." Ex. 2 to Smith Decl. Kandt's arguments in opposition appear to imply that he feels an inconsistency is created by the language immediately following that sentence:

> These injuries may be more likely to occur in people with pre-existing injuries or conditions such as pregnancy, osteoporosis, spinal injuries, diverticulitis, or in persons having previous muscle, disc, ligament, joint, or tendon damage. It is believed that the risk of these injuries is comparable to or less than the risk(s) from vigorous physical exertion, such as weight training, wrestling, or other intense athletic endeavors.

Id. However, this language does not contradict the warning that "fractures to bone, including vertebrae, may occur" nor does it create an internal inconsistency. Instead, it explains that the risk of vertebral infractions is heightened in persons with certain pre-existing injuries or conditions. The fact that Kandt alleges that he did not understand the warning to apply to him because he misinterpreted the warning to apply only to persons with certain pre-existing injuries or conditions does not render the warning unclear as a matter of law. On its face, the warning

9

unequivocally states that there is a risk of vertebral fractures, which injury may be more likely to occur in persons with certain pre-existing injuries or conditions. This plain meaning would be subverted by Kandt's interpretation that the risk of vertebral fractures exists only for persons with certain pre-existing injuries or conditions.

On its face, Taser's warning clearly identifies the risk of vertebral fractures, and is sufficiently forceful to convey that risk. Kandt has failed to come forward with any relevant facts or identify any portions of the warning demonstrating that a factual question exists as to its adequacy. Therefore, Taser's warning is adequate as a matter of law. Accordingly, Taser is entitled to summary judgment on this remaining of Kandt's claims against it.

Because Taser's motion for summary judgment is granted in its entirety, the remaining motions in limine and motion to strike affirmative defenses are denied at moot.

## *V. Conclusion*

For the aforementioned reasons, it is hereby ORDERED that Defendant's motion for summary judgment against Plaintiff pursuant to Fed. R. Civ. P. 56, see Dkt. No. 63, is GRANTED in its entirety, and it is further

ORDERED that Plaintiff's motion to preclude Defendant from offering expert testimony, see Dkt. No. 62, is DENIED as moot; and it is further

ORDERED that Plaintiff's motion to strike certain of Defendant's affirmative defenses, see Dkt. No. 64, is DENIED as moot, and it is further

ORDERED that Defendant's motion to exclude the expert testimony of John Webster, Ph.D., and to limit the causation testimony of three of Plaintiff's treating

physicians, see Dkt. No. 65, is DENIED as moot, and it is further

ORDERED that Defendant's motion to exclude the opinions of Plaintiff's proffered economist, William Blanchfield, Ph.D., see Dkt. No. 66, is DENIED as moot, and it is further

ORDERED that Defendant's motion to exclude the warning opinions of Plaintiff's proffered expert, Kenneth Laughery, Ph.D., see Dkt. No. 67, is DENIED as moot, and it is further

ORDERED that Plaintiff's motion to preclude Defendant from offering waiver or release as evidence, see Dkt. No. 68, is DENIED as moot.

This ORDER disposes of the entire action. Accordingly, the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED:	July 10, 2012
	Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge